ROMAN CLEANSER COMPANY *v* MURPHY

1. UNEMPLOYMENT COMPENSATION — DETERMINATION — APPEAL AND ERROR — FINAL DETERMINATION.

Determination of Employment Security Commission that the claimant's employment by a Kentucky employer requalified him for unemployment benefits after he voluntarily quit his Michigan employer and that his refusal of an offer of employment in Michigan because he wished to remain in Kentucky did not disqualify him was final and not reviewable by the appellate court where the claimant's employer did not appeal the determination within the statutory time limit (MCLA 421.32[a]).

2. UNEMPLOYMENT COMPENSATION—BENEFIT CHECK—DETERMINATION—ISSUES DECIDED—GOOD CAUSE.

The issuance of each unemployment compensation benefit check is a determination entitling the claimant's employer to a redetermination of the former employee's current eligibility and qualification for benefits; however, absent a change of facts or of laws, questions already decided may not be reopened unless for good cause the commission reconsiders them (MCLA 421.32[a], 421.32[d]).

3. UNEMPLOYMENT COMPENSATION—BENEFIT CHECK REDETERMINATION—GOOD CAUSE REDETERMINATION.

The reconsideration concerning a change of fact or of law relative to an unemployment compensation claimant's eligibility for benefits, statutorily obligatory on the claimant's employer's demand when a benefit check is issued, does not entitle an employer to a redetermination of all issues already decided on the original determination of eligibility, because the employer would be free to relitigate all issues without the statutory requirement of a showing of good cause (MCLA 421.32[a], 421.32[d]).

---

REFERENCE FOR POINTS IN HEADNOTE

[1–4] 48 Am Jur, Social Security, Unemployment Insurance and Retirement Funds, § 43 *et seq.*

4. Unemployment Compensation—Benefit Check Redetermination—Good Cause Redetermination.

> An Employment Security Commission's redetermination of the issuance of a benefit check, itself a determination, in which the commission reiterated its original determination of eligibility did not mean that the original issues were reconsidered where the statement of eligibility indicated that nothing had changed from the original determination and where there was no affirmative evidence presented that the redetermination on the check payment was also a reconsideration for good cause of issues already decided (MCLA 421.32[a], 421.32[d]).

Appeal from Court of Appeals, Division 1, J. H. Gillis, P. J., and Levin and Borradaile, JJ., affirming Wayne, Thomas J. Murphy, J. Submitted January 4, 1972. (No. 5 January Term 1972, Docket No. 53,260.) Decided February 25, 1972. Rehearing denied April 10, 1972.

29 Mich App 155 reversed.

William J. Murphy presented his claim against Roman Cleanser Company for unemployment compensation. Benefits granted by the Employment Security Commission and affirmed by Appeal Board. Roman Cleanser appealed to circuit court. Reversed. The Commission appealed to the Court of Appeals. Affirmed. The Commission appeals. Reversed.

*Louis J. Colombo, Jr.,* for employer Roman Cleanser Company.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Robert J. Eisenberg* and *George M. Blaty,* Assistants Attorney General, for appellant Employment Security Commission.

*Amicus Curiae: Stephen I. Schlossberg, John A. Fillion, Jordan Rossen,* and *Stanley Lubin, for* International Union, UAW.

T. M. KAVANAGH, C. J. Appellant Michigan Employment Security Commission (hereinafter called the Commission) appeals from a decision of the Court of Appeals (29 Mich App 155) affirming the circuit court of Wayne County which had reversed the Commission, Referee and Appeal Board.

Claimant William J. Murphy was employed by Roman Cleanser Company (hereinafter called the Company) at its Detroit plant from August 11, 1965 to September 30, 1967. On the latter date he voluntarily left his work for reasons not attributable to his employer and moved to Kentucky. He found employment in Kentucky from November 29, 1967 to January 18, 1968, earning more than the statutory weekly minimum.[1] On January 18, 1968, he was laid off.

On January 31, 1968, claimant filed an interstate claim for unemployment benefits, claiming he had completed the six requalifying weeks required by section 29 (3) (a) of the Michigan Employment Security Act and had become eligible for benefits.

On March 1, 1968, the Company wrote the Commission objecting to the claim and indicating that it would defend the action. It further offered to put claimant to work at its Detroit, Miami or Atlanta plant. After investigation by the Commission, notice of determination was mailed on March 13, 1968, to all interested parties indicating that petitioner was eligible for benefits for 20 weeks at $76 per week. The Commission's determination was as follows:

"Claimant left work 9-30-67 for reasons which were not attributable to employer.

"Therefore, the claimant is disqualified under Subsection 29 (1) (a) of the act for the week ending 9-30-67 and is subject to a 6 week requalification period under Subsection 29 (3) of the act.

---

[1] MCLA 421.29 (3) (a); MSA 17.531 (3) (a).

"In this instance, the requalification requirement under Subsection 29 (3) of the act has been satisfied on 1-27-68.

"In addition, the claimant's benefit entitlement with this employer is reduced by 6 weeks in accordance with Subsection 29 (4) of the act.

"Claimant's employment with Wright and Crouch Const. Co. P. O. Box 755 Mayfield, Ky. from 11-29-67 to 1-18-68, verified, is held to requalify claimant.

"With regard to offer of work by Michigan employer, claimant states he wishes to remain in present area. No disqualification under Subsection 29-(1) (e). Payments will be withheld for statutory appeal period."

No appeal was taken from this determination of March 13, 1968, within 15 days after the mailing or personal service of the notice as required by the statute.

The claimant was paid ten checks, the last being on May 1, 1968, covering benefits up to April 20, 1968.

On May 17, 1968, the Company again wrote to the Commission indicating work was still open for the claimant. The gist of this letter was the same as the letter of March 1, 1968. The Commission then conducted a further investigation and on June 13, 1968, issued a redetermination of its May 1, 1968 order. This redetermination read as follows:

"Employer, Roman Cleanser Company, has requested review in the matter of claimant's continued unemployment since separation 1–8–68 from Kentucky employer and the fact that the Michigan employer could place claimant in Detroit, Miami or Atlanta.

"Claimant has stated that he does not want to leave Kentucky at this time and, therefore, will not accept the offered work. Based on the establishment

of claimant's residence in Kentucky at this time, it is felt that the offered work is not suitable within the meaning of Subsection 29 (1) (c) and claimant is not subject to disqualification because of his refusal thereof.

"Claimant has advised that as a result of referral made to him by the Mayfield, Ky., Employment Service Office, claimant became employed 5-13-68 with a Mr. Chester in Mayfield, Ky., evidently as a carpenter. It is held that claimant has met the eligibility requirements of Subsection 28 through calendar week ending 5-11-68. Payments will be withheld for the statutory appeal period."

This affirmed the previous determination.

On June 24, 1968, the Company appealed from the redetermination of June 13, 1968. A Referee was appointed and testimony was taken on two occasions. On September 5, 1968, the Referee upheld the June 13, 1968 redetermination of the Commission.

On September 9, 1968, the Company appealed the Referee's decision to the Appeal Board.

On January 17, 1969, the Appeal Board affirmed the Referee's decision, and on January 30, 1969, the Company took an appeal from the Appeal Board's decision to the circuit court of Wayne County. The circuit judge found that the March 13, 1968 determination was not *res judicata*. Proceeding upon the theory that the purpose of the act was to protect persons involuntarily unemployed and that the act is limited to the general welfare of this state, he held that the word "residence" should be interpreted as residence in Detroit, Michigan, where claimant lived when he voluntarily quit his employment. Accordingly, he entered judgment in favor of the Company.

The Commission appealed.   A majority of the Court of Appeals affirmed the circuit court's decision.   Judge CHARLES L. LEVIN, dissenting, would have withheld appellate review on the merits because of the Company's failure to timely pursue statutory review of the Commission's determination of March 13, 1968.   Rehearing was denied by the same division of the Court of Appeals.   The Commission's application for leave to appeal was granted by this Court.   384 Mich 828.

Three questions are raised by the Commission on appeal to this Court.

1.  Was the Michigan Employment Security Commission's determination of March 13, 1968, relating to the claimant's separation from his Michigan employer a final order under the provisions of the Michigan Employment Security Act?

2.  Did the Court of Appeals erroneously hold that the claimant could not requalify for benefits under section 29 (3) while residing in Kentucky?

3.  Did the Court of Appeals erroneously hold "suitable" the Michigan offer of work set forth in the Company's protest of May 17, 1968?

4.  Did the Court of Appeals further err by holding the claimant "unavailable for work" within the meaning of the Michigan Employment Security Act?

All of the questions raised in this case were properly discussed and disposed of in the well-reasoned minority opinion of Judge CHARLES L. LEVIN in the Court of Appeals.   We adopt the following portion of that opinion as the opinion of this Court:

"I do not think we can properly reach the meritorious question; the determination of March 13, from which no appeal was taken and which thereupon became final, is, by reason of the doctrines of *res*

*judicata* and collateral estoppel,[5] not subject to collateral attack. [6]

"The March 13 determination of the commission was that Murphy's employment by a Kentucky employer requalified him and that his refusal of an offer of employment in Michigan because he wished to remain in Kentucky did not disqualify him. Manifestly, the questions of the effect upon Murphy's right to receive benefits under the Michigan act of his move to Kentucky, and of his employment there, and of his refusal of employment in Michigan were all involved in and decided by the not appealed and, therefore, final determination of March 13.

"Roman Cleanser points out that under § 32a[7] 'the commission may, for good cause, * * * *re-consider* any prior determination or redetermination after the 15-day period has expired and issue a redetermination affirming, modifying or reversing the prior determination or redetermination'. (Emphasis supplied.) It contends that the redetermination of June 13 (appealed to the circuit court and now before us on appeal from that court) is within the ambit of this language and, thus, the determination of March 13 is not protected by the doctrines of *res judicata* and collateral estoppel.

---

"[5] The doctrines of *res judicata* and collateral estoppel apply to administrative determinations adjudicatory in nature particularly where, as here, a method of appeal is provided and it is clear that it was the legislative intention to make the determination final in the absence of an appeal. See OAG, 1967–1968, No 4628, p 217 (March 25, 1968), which discusses the application of these doctrines to the appeal provisions of the employment security act, the act under which this appeal arises.

"[6] The majority cite cases holding that on appeal a court may consider questions not properly preserved below, but those statements were made in cases on direct appeal where no issue of *res judicata*, collateral estoppel, or finality was presented.

"In this connection it is noteworthy that the appeal board affirmed the decision of the referee who found that no timely protest had been made from the March 13 determination and 'consequently, the issue as to the claimant's separation and failure to accept further work at the time of such separation was not before the referee at this time'.

"[7] MCLA § 421.32a (Stat Ann 1968 Rev § 17.534[1]).

"I think it is clear, however, that the June 13 redetermination[8] was not a 'reconsideration' of issues already decided, but rather was made in response to the commission's statutory obligation under § 32 (d) of the act[9] to determine whether there had been a change of facts or of law affecting Murphy's right to continue to receive benefit checks.

"Under § 32(d), the issuance of each benefit check is a determination entitling the employer to a redetermination of the former employee's current eligibility and qualification. A redetermination may, thus, be obtained at any time upon a claim that there has been a change of facts or of law. But, absent a change of facts or of law, questions already decided may not be reopened unless 'for good cause' the commission 'reconsiders' under § 32a.[10]

"If every § 32 (d) redetermination reopens the issues resolved upon the original determination of eligibility, then the limitation in § 32a, providing that a reconsideration after the expiration of the 15-day appeal period may be made only for good cause shown, would, at least insofar as employer-sought redeterminations are concerned, be of little practical significance. If that were the rule, whenever a benefit check issues, the former employer, by simply requesting a redetermination pursuant to

[8] The use of the same term, 'redetermination', to describe both (1) a reconsideration of an issue already decided and (2) a determination of whether, because of a change of fact or law, a decision previously made should no longer be operative, is confusing and unfortunate.

[9] 'The issuance of each benefit check shall be considered a determination by the commission that the claimant receiving the check was, during the compensable period, covered thereby, eligible and qualified for benefits, and any employer upon receipt of a copy of the check as provided in subsection 21(a) may protest by requesting a redetermination as to such eligibility or qualification as to such period and a determination as to later weeks and benefits still unpaid as are affected by such protest.' MCLA § 421.32(d) (Stat Ann 1968 Rev § 17.534[d]).

[10] Compare *Commissioner of Internal Revenue* v. *Sunnen* (1948), 333 US 591 (68 S Ct 715, 92 L Ed 898), discussing the extent to which the doctrines of *res judicata* and collateral estoppel bar reconsideration of a question adjudicated as to an earlier period; see, also, 46 Am Jur 2d, Judgments, § 421, p 591.

subsection (d), could rehash all the issues resolved by the original determination without showing good cause for reconsideration.

"How then are we to distinguish a redetermination of an original determination—a reconsideration —from a redetermination of a check determination when the redetermination is made after the issuance of a benefit check? It would, of course, simplify our task if the commission would state in so many words in the redetermination whether it is a 'reconsideration' of the original determination for good cause shown or whether it is made mandatorily under subsection (d) and relates only to a later check determination.

"A benefit check was issued to William J. Murphy on May 1, 1968. The commission's redetermination of June 13 states on its face that it redetermines a determination of May 1 (*i.e.,* the issuance of the May 1 check, which by law is treated as a determination) —the original March 13 determination is not adverted to. Merely because the June 13 redetermination reiterates that the continuing refusal by Murphy of employment outside Kentucky did not disqualify him from receiving benefits does not mean that issues decided March 13 were 'reconsidered'. There had been no change of fact or of law, and in that context the restatement of the original March 13 determination as to the effect of refusing employment outside Kentucky does not indicate that the question was reconsidered by the commission. On the contrary, the June 13 redetermination decided simply that nothing had changed and, therefore, Murphy was entitled to continue to receive benefits.

"There is no evidence whatsoever that the commission found good cause for reopening the original March 13 determination.[11] Absent affirmative evi-

---

"[11] Commission regulation 270[4] provides that good cause includes situations when (1) an interested party has newly discovered material facts which through no fault of his own were not available to him at the time of the determination, (2) the commission has additional

dence that the June 13 redetermination, mandatorily
required to be made under subsection (d) as to the
check determination of May 1, also represents a
reconsideration by the commission for good cause
of the original determination of March 13, we have
no basis for concluding that when the commission
issued the redetermination it issued anything other
than a mandatorily-required redetermination of the
May 1 check determination or that it did more than
to determine that there had been no change of law
or fact requiring a discontinuance of the benefits
which it had on March 13 decided Murphy was en-
titled to receive. Accordingly, there is no basis for
concluding that the commission found good cause
for reconsidering or that it did in fact reconsider
the issues decided March 13; those issues could not
be reconsidered on their merits by the appeal board
or the circuit court." 29 Mich App 155, 166–171.

The Court of Appeals and the trial court are
reversed and the Commission's redetermination of
June 13, 1968, is affirmed.

Since the other questions raised in the briefs are
not necessary to the decision of this case, we do not
discuss them.

A public question being involved, no costs shall
be taxed.

---

or corrected information or (3) an administrative clerical error has
been discovered. (1967, AACS, p 4356.)

"*Merren* v. *Employment Security Commission* (1966), 3 Mich
App 383, affirmed by an equally-divided Court in 380 Mich 240,
referred to in the majority opinion, was decided by our Court in
1966 and by the Michigan Supreme Court on March 4, 1968, *i.e.*,
before the determination of March 13 was issued. Reconsideration
by the commission on the basis of *Merren* was not sought in this case.
Except for *Merren*, which was decided by our Court long before
Murphy left the employ of Roman Cleanser and which was decided
by the Supreme Court before the March 13 determination was issued,
nothing new has come to light either of fact or of law which would
justify reopening the March 13, 1968, determination either for (1)
good cause under the statute, or (2) as an exception to general *res
judicata* and collateral estoppel principles."

Black, Adams, T. E. Brennan, T. G. Kavanagh, Swainson, and Williams, JJ., concurred with T. M. Kavanagh, C. J.