STOREY v MEIJER, INC

Docket No. 81136. Argued April 5, 1988 (Calendar No. 6). Decided
    September 19, 1988.

William F. Storey was denied unemployment compensation by
    the Michigan Employment Security Commission on the ground
    that he had been discharged for theft connected with his
    employment with Meijer, Inc. A hearing referee's conclusion
    that neither theft nor misconduct had been established was
    reversed by the MESC Board of Review. The Calhoun Circuit
    Court, Paul Nicolich, J., affirmed, and the Court of Appeals,
    GRIBBS, P.J., and WAHLS and HOOD, JJ., denied leave to appeal
    (Docket No. 89250).

While the case was pending before the Board of Review, the
    plaintiff brought a wrongful discharge action in the Calhoun
    Circuit Court against Meijer. Meijer moved for summary dispo-
    sition on the ground that the affirmation by the circuit court of
    the board's findings of fact regarding the plaintiff's disqualifica-
    tion for unemployment benefits collaterally estopped the plain-
    tiff from relitigating the factual issues. The court, James C.
    Kingsley, J., granted summary disposition for the defendant.
    The Court of Appeals, MAHER, P.J., and SAWYER and R. L.
    TAHVONEN, JJ., affirmed, holding that a factual determination
    of the MESC collaterally estops a party from relitigating the
    issue in a subsequent circuit court action (Docket No. 89904).

In an opinion by Justice CAVANAGH, joined by Chief Justice
    RILEY and Justices LEVIN, BRICKLEY, ARCHER, and GRIFFIN, the
    Supreme Court held:

Determinations by the Michigan Employment Security Com-
    mission of factual issues regarding eligibility for unemployment
    compensation may not be used to collaterally estop the litiga-
    tion of the issues in a subsequent civil action.

1. The doctrine of collateral estoppel must be applied so as to

REFERENCES

Am Jur 2d, Judgments §§ 446 et seq.

Am Jur 2d, Unemployment Compensation §§ 91 et seq.

Doctrine of res judicata or collateral estoppel as barring relitigation
    in state criminal proceedings of issues previously decided in
    administrative proceedings. 30 ALR4th 856.

strike a balance between the need to eliminate repetitious and needless litigation and the interest in affording litigants a full and fair adjudication of the issues involved in their claims. The extent to which the doctrine is applied is dependent upon the nature of the forum in which the initial determination was rendered. Where the rendering forum is an administrative agency, the general principles of collateral estoppel are to be applied only when the procedures are adjudicatory in nature, a method of appeal is provided, and it is clear that the Legislature intended to make the determination final in the absence of an appeal.

2. Section 11(b)(1) of the Employment Security Act providing for the use of information and determinations regarding eligibility for unemployment compensation clearly and unambiguously prohibits the use of such information and determinations in subsequent civil proceedings unless the MESC is a party or complainant in the action. According preclusive effect to these determinations would be incompatible with the legislative policy to provide relief from the hardship caused by involuntary unemployment.

Reversed and remanded.

Justice BOYLE, concurring, stated that the doctrine of collateral estoppel should not apply in this case. Proceedings before the MESC are and should remain summary in nature. Full litigation of any one issue is neither contemplated nor encouraged. Viewed as a whole, the statute was not intended to make determinations regarding eligibility for unemployment compensation final for all purposes.

160 Mich App 589; 408 NW2d 510 (1987) reversed.

UNEMPLOYMENT COMPENSATION — ADMINISTRATIVE DETERMINATIONS — COLLATERAL ESTOPPEL.

Determinations by the Michigan Employment Security Commission of factual issues regarding eligibility for unemployment compensation may not be used to collaterally estop the litigation of the issues in a subsequent civil action (MCL 421.11[b][1]; MSA 17.511[b][1]).

*Garbrecht & Hentchel* (by *Theodore P. Hentchel*) for the plaintiff.

*Jeffrey S. Rueble* for the defendant.

Amici Curiae:

*Erwin B. Ellmann* and *Eli Grier* for American Civil Liberties Union Fund of Michigan.

*White, Beekman, Przybylowicz, Schneider & Baird, P.C.* (by *Thomas A. Baird*), for Michigan Education Association.

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *Theodore Sachs*), for Michigan State AFL-CIO.

*Stark & Gordon* (by *Sheldon J. Stark*) and *Jordan Rossen,* General Counsel, and *Richard W. McHugh,* Associate General Counsel, International Union, UAW, for Michigan Trial Lawyers Association.

CAVANAGH, J. This case presents the issue whether an administrative adjudication of disqualification for unemployment compensation benefits may be used to preclude the litigation of issues in a subsequent civil suit for wrongful discharge or breach of employment contract. We conclude that the application of collateral estoppel to the administrative determinations of the MESC would be contrary to legislative intent and considerations of public policy. An MESC proceeding designed to determine eligibility for unemployment benefits is not an adequate substitute for full access to the circuit court with the full range of remedies available. Consequently, issue preclusion is not available for determinations of the MESC.

### FACTS

William Storey was employed by defendant as the manager of a gas station located at defendant's store in Battle Creek. One of the duties connected with his employment was to check the price of gas

and other products at competing gas stations in the area. Storey used his personal vehicle for this purpose, and he was reimbursed for the mileage driven in order to complete this task. In June, 1982, defendant discharged Storey from his employment for allegedly having submitted expense account vouchers claiming reimbursement for more mileage than was actually driven.

Storey applied for unemployment compensation benefits the day after he was discharged. The MESC determined that he was ineligible for benefits under MCL 421.29(1)(j); MSA 17.531(1)(j) because he had been discharged for theft connected with his work. After a redetermination by the MESC affirming that decision, Storey appealed the denial of benefits to a hearing referee.

A hearing was held on December 2, 1982, and plaintiff appeared with counsel. In direct contrast to both the initial determination and the redetermination by the MESC, the referee concluded that plaintiff's failure to complete his expense vouchers according to the proper procedures established by defendant was a good-faith error in judgment. The referee found insufficient evidence on the record to establish that plaintiff sought reimbursement for expenses that were not legitimate. He concluded that neither employee theft nor misconduct had been established.

The defendant employer appealed this decision to the Board of Review. The board reversed the referee's determination as to benefit rights and found that plaintiff was ineligible for benefits because of employee theft. After the board denied plaintiff's application for rehearing, plaintiff filed an appeal in the circuit court. The circuit court affirmed the decision of the board, and the Court of Appeals denied plaintiff's application for leave to appeal.

On February 2, 1984, while the case was pending before the Board of Review, plaintiff filed the present wrongful discharge action in the circuit court. After the board's finding of disqualification for employee theft was affirmed, the employer filed a motion for summary disposition on the ground that collateral estoppel barred plaintiff from relitigating the issue whether his discharge was for employee theft. MCR 2.116(C)(7). Meijer alleged there was no genuine issue of fact regarding whether it had just cause to terminate plaintiff's employment, since the finding of employee theft had been fully adjudicated in the administrative proceeding and had been reviewed by the circuit court. The circuit court granted defendant's motion, and plaintiff's claim was dismissed.

The Court of Appeals affirmed the dismissal of plaintiff's claim and held that a factual determination of the MESC collaterally estops a party from relitigating that factual issue in a subsequent circuit court action. *Storey v Meijer, Inc,* 160 Mich App 589, 591; 408 NW2d 510 (1987). We granted leave[1] to consider this issue of first impression.

### ANALYSIS

The doctrine of collateral estoppel must be applied so as to strike a balance between the need to eliminate repetitious and needless litigation and the interest in affording litigants a full and fair adjudication of the issues involved in their claims.

---

[1] 429 Mich 885 (1987).

We also granted leave in *Moody v Westin Renaissance Co,* 162 Mich App 743; 413 NW2d 96 (1987), lv gtd 429 Mich 886 (1987), to consider whether a determination made by the MESC on a claim for wrongful discharge is binding upon the parties in a subsequent suit alleging employment discrimination. *Moody* and the present case were to be argued and submitted together to resolve a conflict in the Court of Appeals. However, the *Moody* case was dismissed on a stipulation of the parties on April 11, 1988.

*Howell v Vito's Trucking & Excavating Co,* 386
Mich 37, 48; 191 NW2d 313 (1971). The extent to
which the doctrine is applied is also dependent
upon the nature of the forum in which the initial
determination was rendered.[2] We have previously
determined that when the rendering forum is an
administrative agency, the general principles of
collateral estoppel[3] are to be applied only when the
procedures are adjudicatory in nature, when a
method of appeal is provided, and when it is clear
that the Legislature intended to make the determi-
nation final in the absence of an appeal. *Senior
Accountants, Analysts & Appraisers Ass'n v De-
troit,* 399 Mich 449, 457-458; 249 NW2d 121 (1976);
*Roman Cleanser Co v Murphy,* 386 Mich 698, 703-
704; 194 NW2d 704 (1972).[4]

Our analysis begins with an examination of the
governing statute in order to determine whether
the Legislature intended the determinations of the
MESC to be conclusive in subsequent civil litigation.
It is this inquiry which has led to a conflict in the
Court of Appeals.

The parties have focused on § 11(b)(1) of the
Employment Security Act which provides in part:

Information obtained from any employing unit

---

[2] See, generally, *The preclusive effect of unemployment decisions in
subsequent litigation,* 4 Labor Lawyer 69 (1988); 4 Davis, Administra-
tive Law (2d ed), §§ 21:1-21:5, pp 47-68.

[3] For collateral estoppel to apply, a question of fact essential to the
judgment must have been actually litigated and determined by a
valid and final judgment. In addition, the same parties must have had
a full opportunity to litigate the issue, and there must be mutuality of
estoppel. See *Senior Accountants, Analysts & Appraisers Ass'n v
Detroit,* 399 Mich 449, 458; 249 NW2d 121 (1976); *Howell v Vito's
Trucking & Excavating Co,* 386 Mich 37, 41-42; 191 NW2d 313 (1971).

[4] See also *United States v Utah Construction & Mining Co,* 384 US
394, 422; 86 S Ct 1545; 16 L Ed 2d 642 (1966), wherein the Supreme
Court held that collateral estoppel may be applied to administrative
decisions when the administrative agency (1) acts in a judicial capac-
ity; (2) resolves disputed issues of fact properly before it; and (3)
affords the parties a full and fair opportunity to litigate.

or individual pursuant to the administration of this act, and determinations as to the benefit rights of any individual shall be held confidential and shall not be disclosed or open to public inspection other than to public employees in the performance of their official duties pursuant to this act in any manner revealing the individual's or the employing unit's identity. However, any information in the commission's possession that may affect a claim for benefits or a charge to an employer's rating account shall be available to interested parties. *Except as provided in this act, such information and determinations shall not be used in any action or proceeding before any court or administrative tribunal unless the commission is a party to or a complainant in the action or proceeding, or unless used for the prosecution of fraud, civil proceeding, or other legal proceeding pursuant to subdivision (2).* Any report or statement, written or verbal, made by any person to the commission, any member of the commission, or to any person engaged in administering this law shall be a privileged communication, and a person, firm, or corporation shall not be held liable for slander or libel on account of a report or statement. Such records and reports in the custody of the commission shall be available for examination by the employer or employee affected. [Emphasis added. MCL 421.11(b)(1); MSA 17.511(b)(1).]

The Court of Appeals in the present case dismissed § 11(b)(1) as inapplicable, reasoning that the present defendant did not seek to use the MESC determination of ineligibility for unemployment benefits but, instead, sought to use the MESC's finding of fact that plaintiff's discharge was due to employee theft.

In *Moody v Westin Renaissance Co,* 162 Mich App 743, 748; 413 NW2d 96 (1987), however, another panel of the Court of Appeals expressly rejected that analysis and concluded that § 11(b)(1)

is a clear and unambiguous expression of the
Legislature's intent "to isolate MESC determina-
tions within the narrow confines of eligibility for
benefits, leaving resolution of labor disputes, civil
rights violations and contract disputes to forums
more uniquely adapted to resolution of those dis-
putes."

The Court of Appeals for the Sixth Circuit has
also considered this issue. In *Polk v Yellow
Freight System, Inc,* 801 F2d 190 (CA 6, 1986),[5] the
court held that an MESC determination that the
employee was ineligible for unemployment benefits
because she was discharged for misconduct pre-
cluded her subsequent action in circuit court for
breach of contract. The court rejected the employ-
ee's statutory argument in a footnote, and con-
cluded that § 11(b)(1) refers only to internal deter-
minations. The court found support for this conclu-
sion in MCL 421.33(3), 421.36(3); MSA 17.535(3),
17.538(3) which mandate compliance with Michi-
gan's Freedom of Information Act,[6] and reasoned
that "no presumption of confidentiality, such as
that found in section 421.11(b)(1), attaches to deci-
sions by MESC referees or the review board." 801
F2d 194, n 6.[7]

We disagree with the Sixth Circuit's conclusion
that § 11(b)(1) refers only to "internal determina-
tions." As the *Moody* Court stated, "[w]e do not see

[5] See also *Pilarowski v Macomb Co Health Dep't,* 841 F2d 1281 (CA
6, 1988).

[6] MCL 15.231 *et seq.;* MSA 4.1801(1) *et seq.*

[7] Another panel of the Court of Appeals recently adopted this
reasoning in *Weiler v New Century Bank,* 168 Mich App 354; 423
NW2d 664 (1988). The extent to which provisions of the FOIA and
§ 11(b)(1) interact is not presently before this Court. We note, how-
ever, that the availability of public information under the FOIA is not
without limitation. See MCL 15.243; MSA 4.1801(13); *Kestenbaum v
Michigan State Univ,* 414 Mich 510; 327 NW2d 783 (1982). Further-
more, facilitating public access to information cannot be equated with
according preclusive effect to administrative findings in subsequent
civil litigation.

the word internal in the statute . . . ." 162 Mich App 749. We also note that the Sixth Circuit failed to cite its earlier decision in *Herman Bros Pet Supply, Inc v NLRB,* 360 F2d 176 (CA 6, 1966), in which it upheld the quashing of a subpoena duces tecum served on the MESC to obtain records of unemployment compensation claims. The court relied on § 11(b), even though the predecessor statute in effect at the time made no specific reference to legal proceedings. The court noted that the Michigan Legislature had amended the statute so as to prohibit the use of information and determinations " 'in any action or proceeding before any court or administrative tribunal unless the commission is a party or claimant therein.' " 360 F2d 180. The court then concluded that this amendment made the statute "crystal clear for the future . . . ." *Id.* at 180.[8]

We agree with this conclusion of the *Herman Bros* court and with the statutory analysis of the Court of Appeals in *Moody.* When construing statutory provisions, the task of this Court is to discover and give effect to the intent of the Legislature. *State Treasurer v Wilson,* 423 Mich 138, 143; 377 NW2d 703 (1985); *Karl v Bryant Air Conditioning,* 416 Mich 558, 567; 331 NW2d 456 (1982). Legislative intent is to be derived from the actual language of the statute, and when the language is clear and unambiguous, no further interpretation is necessary. *Hiltz v Phil's Quality Market,* 417 Mich 335, 343; 337 NW2d 237 (1983). We find that § 11(b)(1) clearly and unambiguously prohibits the use of MESC information and determinations in subsequent civil proceedings unless the MESC is a party or complainant in the action.

Furthermore, our decision in this case advances

[8] See also *Wojciechowski v General Motors Corp,* 151 Mich App 399, 407; 390 NW2d 727 (1986).

the legislative purpose of the unemployment compensation system and is supported by considerations of public policy that underlie the exceptions to the application of collateral estoppel.[9] Whether or not the rules of claim or issue preclusion should be given their ordinary effect when the adjudicative determination is made by an administrative tribunal is the subject of 2 Restatement Judgments, 2d, § 83, p 267, which provides in part:

> (4) An adjudicative determination of an issue by an administrative tribunal does not preclude relitigation of that issue in another tribunal if according preclusive effect to determination of the issue would be incompatible with a legislative policy that:
> (a) The determination of the tribunal adjudicating the issue is not to be accorded conclusive effect in subsequent proceedings; or
> (b) The tribunal in which the issue subsequently arises be free to make an independent determination of the issue in question.

The Employment Security Act was intended to provide relief from the hardship caused by involuntary unemployment and is entitled to liberal interpretation. *Noblit v The Marmon Group,* 386 Mich 652; 194 NW2d 324 (1972); MCL 421.2; MSA 17.502. The system is designed to get "money into the pocket of the unemployed worker at the earliest point that is administratively feasible." *California Dep't of Human Resources Development v Java,* 402 US 121, 135; 91 S Ct 1347; 28 L Ed 2d

---

[9] See *Nathan v Rowan,* 651 F2d 1223, 1226 (CA 6, 1981) ("Res judicata is applied if it does not offend public policy or result in manifest injustice."); *Garner v Giarrusso,* 571 F2d 1330, 1336 (CA 5, 1978), reh den 575 F2d 300 (CA 5, 1978) ("Even when the prior decision is made in a judicial, rather than an administrative, forum neither res judicata nor collateral estoppel is rigidly applied. Both defenses must be qualified or rejected when their use would contravene an overriding public policy or result in manifest injustice.").

666 (1971). According preclusive effect to determinations made in this forum would be incompatible with this legislative policy.

Due to the full range of remedies available in a civil action, the parties have a greater incentive to fully litigate the civil claim than the claim for unemployment benefits. If collateral estoppel is applied to determinations of the MESC, both claimants and employers will be forced to fully litigate the administrative claim, potentially delaying the determination of benefit rights and burdening the unemployment compensation system.[10]

The authors of the Restatement addressed this consideration, stating:

> The scheme of remedies may intend that the proceedings in an administrative tribunal be determinative only for the purposes of the controversy immediately before the agency. For example, the scheme may contemplate that the agency proceedings be as expeditious as possible. One aspect of assuring expeditiousness is to confine the stakes to the matter immediately in controversy. Thus, issue preclusion may be withheld so that the parties will not be induced to dispute the administrative proceeding in anticipation of its effect in another proceeding. [2 Restatement Judgments, 2d, § 83, comment h, pp 279-280.]

There is also a substantial risk that the potential application of collateral estoppel will cause a qualified claimant to forego a claim for unemployment compensation in order to protect the right to pursue a civil claim with its full range of benefits. Conversely, the application of collateral estoppel may penalize an unemployed worker who, un-

[10] See *Mack v South Bay Beer Distributors,* 798 F2d 1279, 1284 (CA 9, 1986); *Ferris v Hawkins,* 135 Ariz 329, 333; 660 P2d 1256 (1983); *McClanahan v Remington Freight Lines,* 517 NE2d 390, 395 (Ind, 1988); 4 Labor Lawyer, n 2 *supra,* pp 71-74.

aware of the consequences and perhaps not represented by counsel, pursued a claim for unemployment benefits. This would unquestionably frustrate the legislative purpose of the act. As we stated in *Reed v Employment Security Comm,* 364 Mich 395, 397; 110 NW2d 907 (1961), "[t]he purpose of the act is to benefit unemployed in financial straits, not to penalize them for being in that condition."

### CONCLUSION

Accordingly, to give effect to the Legislature's intent as expressed in §§ 11(b)(1) and to further the purposes of the Employment Security Act, we hold that MESC determinations are not to be used to collaterally estop the litigation of issues in a subsequent civil suit. Determinations made by the MESC are limited to the purpose of determining a claimant's eligibility for benefits.

The decision of the Court of Appeals is reversed, and this case is remanded to the circuit court for further proceedings consistent with this opinion.

RILEY, C.J., and LEVIN, BRICKLEY, ARCHER, and GRIFFIN, JJ., concurred with CAVANAGH, J.

BOYLE, J. I concur in the result reached today because I do not believe that the doctrine of collateral estoppel should apply in this instance. Proceedings before the MESC are and should remain summary in nature. Full litigation of any one issue is neither contemplated nor encouraged. Whether or not the parties before the MESC have a full and fair opportunity to litigate all issues, *United States v Utah Construction & Mining Co,* 384 US 394, 422; 86 S Ct 1545; 16 L Ed 2d 642 (1966), my review of the statute as a whole

persuades me that it was not the purpose of the Legislature to make these determinations final for all purposes. *Senior Accountants, Analysts & Appraisers Ass'n v Detroit,* 399 Mich 449; 249 NW2d 121 (1976); *Roman Cleanser Co v Murphy,* 386 Mich 698; 194 NW2d 704 (1972). For this reason I agree with today's holding that collateral estoppel does not preclude the litigation of a claim for wrongful discharge or breach of employment contract filed subsequently to an administrative disqualification for unemployment compensation benefits.[1] I find it unnecessary to reach the question whether MCL 421.11(b)(1); MSA 17.511(b)(1) also precludes application of the doctrine in this instance.

[1] Of course, I express no opinion on the possible evidentiary use of such information and determinations. See *Sias v General Motors Corp,* 372 Mich 542; 127 NW2d 357 (1964); *Wojciechowski v General Motors Corp,* 151 Mich App 399; 390 NW2d 727 (1986). See also *Plummer v Western Int'l Hotels Co, Inc,* 656 F2d 502 (CA 9, 1981).